# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

Frank Sowers,               )
     Plaintiff,        )
                       )
v.                      )       1:17cv1490 (TSE/IDD)
                       )
United States of America, et al.,    )
     Defendants.       )

## MEMORANDUM OPINION

Frank Sowers, a federal inmate proceeding pro se, has filed a civil rights action, pursuant

to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)

and the Federal Tort Claims Act ("FTCA"), alleging that he was not provided with proper

medical care over a two-week period during his former incarceration at FCC Petersburg.[1] The

matter is before the Court on dispositive motions filed by all defendants. In each instance,

plaintiff was provided with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

1975) and Local Rule 7(K), and in each instance plaintiff has filed a response. After careful

consideration, plaintiff's FTCA claim against the United States of America must be dismissed for

lack of subject matter jurisdiction and in the alternative for failure to state a claim pursuant to

Fed. R. Civ. P. 12(b)(6). In addition, summary judgment must be entered in favor of defendants

Lt. Heather Williams, Dr. Mark DiCocco, and Dr. Katherine Laybourn (collectively, the

"individual federal defendants") on plaintiff's Bivens claim that they violated his Eighth

Amendment right to be free of cruel and unusual punishment. Plaintiff's claim against defendant

Ms. Goffaux, an independent contractor employed as a x-ray technician at FCC Petersburg, must

be dismissed, and plaintiff's letter to the Court dated June 10, 2018 and docketed on July 13,

---

[1]Sowers is presently incarcerated at FCI Cumberland.

20181 will be construed as an unauthorized sur-reply seeking discovery, and denied. Plaintiff's claims against unserved defendants identified only as Unknown Lieutenant, Unknown Health Services Administrator, and Unknown Medical Staff must be dismissed, without prejudice, pursuant to Fed. R. Civ. P. 4(m).

## I. Material Facts Common to All Claims

The following undisputed material facts are pertinent to Sowers' claims against all defendants:[2]

1.  At all times relevant to this action, Sowers was an inmate confined at the Federal Prison Camp in the Federal Correctional Complex in Petersburg, Virginia. Compl. ¶ 3.

2.  Plaintiff underwent surgery to repair an inguinal hernia on December 21, 2015. Compl. ¶ 13.

3.  Eight days after the hernia surgery, starting at around midnight on December 29, 2017 and continuing into the following morning, plaintiff began to experience shortness of breath and chest pain. Compl. ¶ 14.

4.  From December 29, 2015 until January 14, 2016, plaintiff was examined and treated repeatedly by medical professionals at FCC Petersburg in an attempt to diagnose his condition. Compl. ¶¶ 15 - 22.

5.  When staff at FCC Petersburg were unable to identify the cause of plaintiff's discomfort after taking x-rays on two occasions and examining him on several others, plaintiff was transported to the Federal Medical Center in Butner, North Carolina ("FMC Butner") on January 14, 2016. Compl. ¶ 23.

---

[2]Facts relevant only to individual claims will be set out in connection with the discussion of each claim.

6.  Upon plaintiff's arrival at FMC Butner a CT scan was performed which revealed a pulmonary embolism, for which plaintiff was treated immediately. Compl. ¶¶ 23 - 24.

7.  Plaintiff alleges that the delay in diagnosing and treating his embolism has caused "a complete permanent change in the way his body functions," in particular in that he "struggles with stamina" and has noticed a decreased energy level and shortness of breath. Compl. ¶ 25.

## II. United States' Motion to Dismiss or in the Alternative, for Summary Judgment

Sowers has sued the United States pursuant to the FTCA for what he describes as the negligent medical care he received at FCC Petersburg from December 29, 2015 through January 14, 2016. The United States has moved for dismissal of the claim on the grounds that prior to filing this lawsuit, Sowers failed to exhaust his administrative remedies and failed to consult with a medical expert as required by the Virginia Medical Malpractice Act ("VMMA"). [Dkt. No. 16-17, 19]

A.  Additional Pertinent Undisputed Facts

1.  Sowers submitted an administrative tort claim on September 17, 2017, which was received on October 4, 2017, in which he alleged that he had received negligent medical care from FCC Peterburg's medical staff and from defendant Ms. Goffaux, a contract x-ray technician employed at that institution, when his pulmonary embolism went undiagnosed for two weeks. Compl. ¶2; GEX 2 - 3.[3]

2.  Sowers filed the instant action no later than December 28, 2017, when the complaint was entered on the docket.[4]

---

[3]The government's exhibits are attached to its Memorandum of Law, Dkt. No. 19.

[4]A pleading submitted by an unrepresented prisoner is deemed filed when it is delivered to prison officials for mailing. Houston v. Lack, 487 U.S. 266 (1988). Here, Sowers executed his

3.    Prior to filing the complaint, Sowers failed to consult any expert and failed to obtain an expert certification that any FCC Petersburg medical professional deviated from the standard of care or that such a deviation caused his purported injuries. GEX 4-5.

4.    The Bureau of Prisons ("BOP") denied Sowers' administrative tort claim on April 2, 2018, over three months after this lawsuit was filed. GEX 6.

B. Failure to Exhaust Administrative Remedies

1.    Standard of Review

Federal district courts are courts of limited jurisdiction and possess only the jurisdiction granted to them by the United States Constitution and federal statutes. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). When a district court lacks subject matter jurisdiction over an action, the action is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1). Arbaugh v. Y&H Corp., 546 U.S. 500, 506-07 (2006). In determining whether jurisdiction exists, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment ...." Richmond, Fredericksburg & Potomac Railroad Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). A Rule 12(b)(1) motion to dismiss should be granted when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Balfour Beatty Infrastructure, Inc. v. Mayor and City Council of Baltimore, 855 F.3d 247, 251 (4th Cir. 2017).

2.    Analysis

---

complaint on December 20, 2017 [Dkt. No. 1 at 7], and in the absence of evidence to the contrary the Court generally assumes a pleading was delivered for mailing on the day of its execution. As will be seen, however, Sowers' FTCA claim is subject to dismissal regardless of whether the complaint is deemed to have been filed on that date or on the date it was docketed.

The Court lacks subject matter jurisdiction over Sowers' FTCA claim because he failed to exhaust his administrative remedies prior to bringing the instant lawsuit. Generally, the United States and its agencies enjoy sovereign immunity from suit unless Congress has explicitly abrogated such immunity. FDIC v. Meyer, 510 U.S. 471, 475 (1994). The FTCA provides a limited waiver of that immunity insofar as it allows the United States to be held liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government ... under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(2); see Suter v. United States, 441 F.3d 306, 310 (4th Cir.), cert. denied, 127 S.Ct. 272 (2006). The United States' waiver of sovereign immunity is limited, however, and is subject to certain specific exceptions which are jurisdictional in nature. See Medina v. United States, 259 F.3dd 220, 223-24 (4th Cir. 2001). One such exception is the requirement that a claimant must exhaust his administrative remedies with the appropriate federal agency prior to bringing suit in federal court. 28 U.S.C. § 2675(a);[5] see also, McNeil v. United States, 508 U.S. 106, 110-11 (1993) (dismissal required where

---

[5] 28 U.S.C. § 2675(a) provides in pertinent part:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant at any time thereafter be deemed a final denial of the claim for purposes of this section.

administrative remedies are not exhausted); Plyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990) (administrative exhaustion requirement is jurisdictional and cannot be waived).

To exhaust administrative remedies under the FTCA, a claimant not only must present an administrative claim to the BOP, but also must afford the BOP at least six months to adjudicate the claim prior to filing suit in federal court. See 28 U.S.C. § 2675(a). A claimant's failure to do so requires dismissal of a prematurely-filed federal action. See Plyler, 900 F.2d at 42 - 43 (where "six months had not yet elapsed since the administrative claim was filed, nor had the claim been denied by the agency" when a federal complaint was filed, "the district court was required ... to dismiss [the federal action] for lack of jurisdiction.").

Here, Sowers submitted an administrative claim concerning his medical care at FCC Petersburg on September 24, 2017, which was received on October 4, 2017. GEX 2, 3. He filed the complaint in this action three months later, on December 28, 2017. Dkt. No. 1. The administrative claim was denied on April 2, 2018, over three months after the federal complaint was filed. GEX 6. Under these circumstances no jurisdiction exists to entertain Sowers' FTCA claim, because when the complaint was filed "six months had not yet elapsed since the administrative claim was filed, nor had the claim been denied by" the BOP. Plyler, 900 F.2d at 42 - 43. The fact that Sowers' administrative claim was denied after he initiated this federal lawsuit does not alter that conclusion. See McNeil, 508 U.S. at 113 (holding that because the "FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies," the district court properly dismissed claimant's federal action when he "failed to heed that clear statutory command"); Plyler, 900 F.2d at 42-43 (where plaintiff failed to wait six months after submission of his administrative claim before filing suit, district court was without jurisdiction when the lawsuit was filed, and could not obtain jurisdiction by not

acting on a motion to dismiss until the requisite period expired); Bloch v. Executive Office of the President, 164 F. Supp 3d 841, 863 (E.D. Va. 2016) (Ellis, J.) (denying plaintiff's motion to amend his complaint with his efforts to exhaust administrative remedies after the complaint was filed on the ground that the "proposed amendment c[ould] not remedy the jurisdictional fact that he failed to comply with" § 2675(a)).

Just as in the foregoing authorities, Sowers failed to exhaust his administrative remedies before filing this lawsuit, and the court consequently was without jurisdiction to entertain the matter at its inception. Neither the expiration of six months since the administrative claim was filed nor the BOP's denial of the claim after the filing of the instant complaint can cure that jurisdictional defect. Accordingly, Sowers' FTCA claim must be dismissed.

C. Failure to Comply with the Virginia Medical Malpractice Act

Even if jurisdiction existed for this Court to consider Sowers' FTCA claim, it is readily apparent the claim would be subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) because Sowers has failed to comply with the pre-filing requirements of Virginia's Medical Malpractice Act ("VMMA").[6] That provision provides:

> Every motion for judgment, counterclaim, or third party claim in a
> medical malpractice action, at the time the plaintiff requests service
> of process upon a defendant, or requests a defendant to accept service

---

[6]To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged;" however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. Id. Moreover, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...," Twombly, 550 U.S. at 55, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-1950.

of process, shall be deemed a certification that the plaintiff has obtained from an expert witness whom the plaintiff reasonably believes would qualify as an expert witness pursuant to subsection A of § 8.01-581.20 a written opinion signed by the expert witness that, based upon a reasonable understanding of the facts, the defendant for whom service of process has been requested deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed.

This provision requiring acquisition of an expert opinion applies to claims brought against the United States pursuant to the FTCA. Bond v. United States, 2008 WL 4774004 (E.D. Va. Oct. 27, 2008) (Cacheris, J.). Virginia law requires dismissal of any medical malpractice action in which the plaintiff fails to complete the VMMA's pre-filing requirements. Va. Code § 8.01-20.1 Thus, both the Fourth Circuit and jurists of this court have held on numerous occasions that failure to comply with the pre-filing certification provision is fatal to a plaintiff's FTCA claim. See, e.g., Parker v. United States, 475 F. Supp. 2d 594, 597 (E.D.Va.) (Ellis, J.), aff'd, 251 F. App'x 818 (4th Cir. 2007); Reed v. United States, 2015 WL 1402127, at * 3-4 (E.D. Va. Mar. 25, 2015) (Brinkema, J.), aff'd, 620 F. App'x 194 (4th Cir. 2015); Smith v. United States, 2010 WL 246595 (E.D. Va. Jan. 19, 20101) (O'Grady, J.). That a plaintiff is a prisoner does not exempt him from obtaining the required certification. Smith at *3, n. 5.

A narrow exception to the pre-filing expert certification requirement exists only if the medical malpractice alleged lies within the "range of the jury's common knowledge and experience." Va. Code § 8.01-20.1. That exception does not apply here. Contrary to Sowers' assertion that his "cause of action does not require an Expert Certification," GEX 4-5, courts hold that it is a "rare instance' in which "expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of a jury's common knowledge." Beverly Enterprises-

Va. v. Nichols, 441 S.E.2d 1, 3 (Va. 1994). Indeed, this Court has held that purported negligence in the diagnosis of a medical condition is outside a factfinder's common knowledge and thus requires expert certification under the VMMA. Parker, 475 F. Supp. 2d at 597. Similarly, it has been recognized in this district that a claim that delay in the receipt of medical treatment was the proximate cause of a plaintiff's permanent damage was not within the purview of a jury's common knowledge, and that failure to comply with the VMMA pre-filing expert certification requirement was fatal to the plaintiff's case. Bond, 2008 WL 4774004, at *2-3. Here, then, where Sowers challenges the failure of medical professionals to diagnose his pulmonary embolism and to begin its treatment more rapidly, he "calls into question a quintessential medical judgment" that "can be resolved only by reference to expert opinion testimony." Parker, 475 F. Supp. 2d at 597. Consequently, even if Sowers had exhausted his administrative remedies prior to bringing this action, such that the Court had jurisdiction over the matter, his claim still would be subject to dismissal for his failure to obtain a pre-filing expert certification as required by the VMMA.

   D. Sowers' Response

   In objections to the United States' Motion to Dismiss filed on June 12, 2018 [Dkt. No. 31], Sowers argues that his FTCA claim should be allowed to proceed because the Supreme Court and the Fourth Circuit Court of Appeals have recently held that the exhaustion requirement of 28 U.S.C. § 2675(a) is not jurisdictional. Id. at 2-3, citing United States v. Kwai Fun Wong, __ U.S. __, 135 S.Ct. 1625 (2015) and Raplee v. United States, 842 F.3d 328 (4th Cir. 2016). In this, he is simply mistaken. As the United States points out correctly in its reply, both of those decisions concern 28 U.S.C. § 2401 rather than § 2675(a). Section 2401 sets out a statute of

limitations requiring a plaintiff to file an administrative tort claim within two years after the cause of action accrues and within six months following the final denial of the administrative claim. See United States v. Kubrick, 444 U.S. 111, 117 (1979). In both Wong and Raplee, the courts held that because the § 2401 statute of limitations is not jurisdictional, it is subject to equitable tolling under appropriate circumstances. Wong, 135 S.Ct. at 1632-33; Raplee, 842 F.3d at 335. In contrast, § 2675(a) is an exhaustion provision which has been held by both the Supreme Court and the Fourth Circuit to be jurisdictional. McNeil, 508 U.S. at 110-11; Plyler, 900 F.2d at 42-43. To be sure, courts that have considered the issue have held uniformly that the holding in Wong has no bearing on the jurisdictional nature of § 2675(a)'s exhaustion requirement. See, e.g., Barber v. United States, 642 F. App'x 411, 415 n. 3 (5th Cir. Mar. 20, 2016) ("We find that Wong's holding regarding the FTCA's time limits has no bearing on our analysis of the jurisdictional limitation provided by 28 U.S.C. §2675(a)'s presentment requirement."); Durricott v. Koch, 2015 WL 4459962, at *3 (D.Md. Jul. 20, 2015) (holding Wong inapplicable to § 2675(a), which remains jurisdictional); Bloch v. Executive Office of the President, 164 F.Supp.3d 841, 861 (E.D. Va. Feb. 2016) (holding post-Wong that sovereign immunity is not waived "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing" as required by § 2675(a)). In this case, because it is uncontroverted that Sowers failed to exhaust his administrative remedies by affording the BOP six months to adjudicate his claim prior to filing the instant action, this Court lacks subject matter jurisdiction to adjudicate his FTCA claim. Plyler, 900 F.2d at 42-43.

Sowers also attempts to refute the applicability of the VMMA's pre-filing requirements to his claim, but his arguments are without merit. The VMMA defines a suit for "malpractice" as "any tort action or breach of contract action for personal injuries or wrongful death, based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient." Va. Code Ann. § 8.01-581.1. Sowers argues that he was not required to obtain an expert certification because he now claims only that non-medical personnel at FCC Petersburg failed to take him to a hospital when he complained of chest pains in the middle of the night and that one of the x-ray machines at that facility was not working properly. His position is incorrect. The claim that BOP lieutenants failed to obtain medical treatment for Sowers in a timely manner plainly falls within the VMMA definition of malpractice as a "tort action ... for personal injuries ... based on heath care...services...which should have been rendered by a health care provider to a patient." See Bond v. United States, 2008 WL 4774004, at *3 (E.D. Va. Oct. 27, 2008) (Cacheris, J.) (holding that a claim that BOP officers failed to retrieve plaintiff from his cell in time for an orthopedic appointment and thereby caused a two-month delay in his treatment required VMMA certification because plaintiff would have to show that "failure to provide him with an orthopedic examination for his finger within two months deviated from the applicable standard of care, and that the delay caused permanent damage," issues clearly outside "the range of the jury's common knowledge and experience.").

Sowers' claim that an allegedly malfunctioning x-ray machine at FCC Petersburg hindered the diagnosis and treatment of his pulmonary embolism likewise amounts to a "tort action ... for personal injuries ... based on heath care...services rendered, or which should have been rendered by a health care provider to a patient." Va. Code Ann. § 8.01-581.1. A chest x-

ray is a "health care service," and Sowers claims here that either it was improperly "rendered" or it "should have been rendered" differently. Compl. ¶¶ 16, 19-21. In addition, his allegations clearly lie outside the scope of a juror's common knowledge, since he expressly acknowledges that the x-ray machine in question functioned well enough to provide the radiologist with x-rays of his chest twice. Compl. ¶¶ 16, 20-21. The question of whether the images of Sowers' chest produced by the x-ray machine deviated from the standard of care, and whether that deviation proximately caused his injuries, would require expert testimony. Sowers admits that he did not obtain expert certification to either component of his FTCA claim. GEX 5. Accordingly, even if this Court had subject matter jurisdiction to adjudicate the claim, it would require dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

E. Conclusion

For these reasons, the United States of America's Motion to Dismiss must be granted. Plaintiff's FTCA claim must be dismissed for lack of subject matter jurisdiction for his failure to exhaust his administrative remedies prior to bringing this lawsuit, and in the alternative for failure to state a claim due to his failure to comply with the pre-filing expert certification requirement of the VMMA.

## II. Motion for Summary Judgment of the Individual Federal Defendants

Sowers has sued BOP employees Lt. Heather McWilliams, Clinical Director Dr. Mark DiCocco, and Medical Officer Dr. Katherine Laybourn pursuant to Bivens, claiming that they violated his Eighth Amendment right to be free of cruel and unusual punishment when they failed to diagnose and properly to treat his pulmonary embolism between December 29, 2015, and January 14, 2016. The defendants have filed a Motion for Summary Judgment with a

12

supporting memorandum of law and exhibits [Dkt. No. 20 - 22], arguing that none of their actions with respect to Sowers constituted an Eighth Amendment violation, and that even were that not so, they enjoy qualified immunity as to plaintiff's claims. Plaintiff submitted his opposition to the defendants' motion on June 12, 2018 [Dkt. No. 31], and defendants subsequently filed a reply. [Dkt. No. 36] Sowers then filed a sur-reply in the form of a letter to the Court [Dkt. No. 38], to which defendants responded on August 20, 2018. [Dkt. No. 49]

A. Additional Pertinent Undisputed Facts

1. When Sowers began to experience chest pain and shortness of breath eight days after his hernia surgery, at around midnight on December 29, 2015, he informed the correctional officer on duty at FCC Petersburg of his discomfort. Compl. ¶ 14. The officer called the lieutenants on duty at the low-security institution at FCC Petersburg because Health Services had closed for the evening. Id.

2. After Health Services closes for the evening, FCC Petersburg doctors rotate serving as the on-call physician available for telephone consultation regarding after-hours emergencies. DEX 5 ¶ 6; DEX 6 ¶ 6. Sowers does not allege that either Dr. Laybourn or Dr. DiCocco was called on the night in question. Although Sowers alleges that Dr. Laybourn or Dr. DiCocco had "oversight" over Health Services, Compl. ¶¶ 14, 34, neither had any role in determining either the hours when or the level at which Health Services is staffed. DEX 5 ¶ 9; DEX 6 ¶ 6.

3. Sowers alleges that defendant Lt. McWilliams came to his location at the FCC Camp from the Low Facility in response to his complaint, and told him to wait for sick call to open at 6:30 a.m. Compl. ¶ 14. The Petersburg Daily Assignment Rosters indicate, however, that McWilliams left FCC Petersburg on December 28, 2015 at the end of her shift at 4:10 p.m., and did not return until 4:00 a.m. on December 29, 2015. DEX 2 ¶¶ 7-8; DEX 3 at 3; DEX 4 at 3-4.

13

In other words, when Sowers began to complain of discomfort at around midnight on December 29, 2015, McWilliams was not present at FCC Petersburg. Further, when McWilliams came to work on December 29, 2015 she initially reported for duty to the Medium facility rather than the Low facility, and she did not report to the Low facility until around 8:00 a.m., by which time Health Services was open and medical staff were present. DEX 2 ¶¶ 9-10; DEX 4 at 3-4; DEX 2 ¶ 11. Lt. McWilliams had no communication with Sowers personally or with anyone else regarding his him on the evening in question, nor was she involved in any way in his medical care. DEX 2 ¶ 5.

4. Sowers was seen in Health Services at 6:26 a.m. on December 29, 2015. DEX 1 at 79. He "complain[ed] of having night sweats and [] some lung congestion ...;" he explicitly denied having pain, shortness of breath or labored breathing. Id. Mid-Level Provider ("MLP") Negron took Sowers' vital signs and noted that his oxygen saturation was 98%. Negron suspected that Sowers had bronchitis, ordered an x-ray of Sowers' chest, and prescribed amoxicillin. Id. at 79-80.

5. On December 31, 2015, defendant Virginia Goffaux, who is an independent contractor not employed by the BOP, x-rayed Sowers' chest. Compl. ¶ 20; DEX 1 at 91. The results were "[n]egative except for: lateral suboptimal technique." DEX 1 at 91. Sowers asserts that the x-ray equipment was faulty and that Drs. DiCocco and Laybourn failed to maintain it properly, Compl. ¶¶ 20, 34, but neither had any involvement in any decisions regarding the procurement, maintenance, or replacement of medical equipment at FCC Petersburg. DEX 5 ¶7; DEX 6 ¶ 7.

6. The following day, Sowers reported again to Health Services, this time complaining of "chest pain radiating right side more when he is laying down." DEX 1 at 74-78. He again denied any shortness of breath or labored breathing. Id. MLP Negron took Sowers' vital signs and

14

noted that his oxygen saturation was still 98%. Id. He ordered an EKG which had "normal/mild positive Murphy's SIGN results," as well a second x-ray to "rule out intercostal muscle pull vs. gallstone." Id. at 75-76.

7. Sowers returned to Health Services on January 5, 2016 and received medication from MLP Zayas. Id. at 72.

8. On January 6, 2016, Sowers received a second chest x-ray and an abdominal x-ray. Id. at 89-90. The abdominal x-ray produced negative findings and conclusions. Id. at 90. The chest x-ray showed " [i]ncreased right effusion vs. pleural thickening; possible focal abnormality in right lobe." Id. at 89. The radiologist determined that she "[could] not exclude infection or mass." Id.

9. On January 7, 2016, Sowers again went to Health Services, where he reported to MLP Zayas that "for the last 10 days [he had been] having pain in his lower right chest and mid axillary line" and that "deep breath[s] worsened the chest pain." Id. at 57. Zayas noted that Sowers' "EKG and [chest x-ray] were normal. Patient was placed on antibiotic with little improvement of the pain. On 1/6/2016 [chest x-ray] was repeated and wet reading shows a shadow in the area that he has been complaining of chest discomfort. Problem began after he ha[d] a[n] inguinal hernia repair." Id. Sowers again denied experiencing any shortness of breath or labored breathing. Id.

10. Based on the January 6 x-ray, MLP Zayas suspected that Sowers had a pleural effusion and/or a mass in his right lung. Id. at 59. As a result, he requested that Sowers be transported to FMC Butner for a CT scan. The Utilization Review Committee, which consisted of Drs. DiCocco, Laybourn and Piscetelli, approved the request on January 12, 2016. Id. at 84-85.

15

11. Two days later, on January 14, 2016, Sowers was transported to FMC Butner, where he received the CT scan requested by FCC Petersburg. Id. at 52. It showed "one apparent pulmonary embolus of the posterior basilar branch of the pulmonary artery to the right lower lobe...." Id. at 86. FMC Butner medical staff immediately transported Sowers to a local hospital, where he was placed on a regimen of the anticoagulant medications Lovenox and Coumadin. Sowers was discharged back to FMC Butner that same day, and he remained there until he was transported back to FCC Petersburg on January 21, 2016. Id. at 2.

B. Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing that there are no genuine, material factual disputes and that it is entitled to judgment based on those facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has met its initial burden, the burden shifts to the non-moving party to point out the specific facts which create disputed issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational factfinder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

C. Analysis

The individual federal defendants argue correctly that they took no action with respect to Sowers which violated his Eighth Amendment rights. To establish an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105

(1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). Thus, a plaintiff must establish two distinct elements. First, he must show that the deprivation of a basic human need was objectively sufficiently serious. This prong is met only when the medical condition at issue is a serious one; that is, a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Shelton v. Angleone, 183 F.Supp. 2d 830, 840 (W.D. Va. 2002) (quoting Cox v. Dist. of Columbia, 834 F.Supp. 439, 441 (D.D.C. 1992); see e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious).

Second, the plaintiff must demonstrate that the official was subjectively sufficiently culpable; that is, that he or she displayed deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106;  Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).  To do so, plaintiff must show that the defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted).  Put another way, plaintiff must establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, "questions of medical judgment," "disagreement between an inmate and medical personnel regarding diagnosis and course of treatment," and "mere malpractice" do not constitute deliberate indifference.  Davis v. Lester, 156 F.Supp. 2d 588, 598 (W.D. Va. 2001).

A delay in medical treatment may constitute deliberate indifference. See Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) (citing Estelle, 429 U.S. at 104-05). A constitutional violation only occurs, however, if the delay results in some "substantial harm" to the patient. Thus, in addition to demonstrating that the medical need at issue is objectively serious, the plaintiff also must show that the delay in the provision of medical care resulted in objectively "substantial harm" in order to establish an Eighth Amendment violation. See Webb v. Hamidullah, 281 Fed. App'x. 159, 166 (4th Cir. 2008) (unpublished decision); Shabazz v. Prison Health Servs., No. 3:10cv190, 2011 WL 2489661, at *6 (E.D. Va. Aug. 9, 2011).

### 1. Lt. McWilliams

Sowers alleges that Lt. McWilliams was called from the Low Facility to his location at the Prison Camp when he began to experience discomfort around midnight on December 29, 2015. After discussing Sowers' symptoms with him, McWilliams allegedly responded, "I don't know what this is," and advised Sowers to wait until 6:30 a.m. "sick call" to be "checked out" by a medical staff member. Compl. ¶ 14. At this juncture, it is apparent that Sowers' claim that McWilliams thereby violated his constitutional rights must fail for two reasons.

First, all evidence of record demonstrates that Sowers has misidentified McWilliams as the lieutenant on duty at midnight and during the morning of December 29, 2015. McWilliams attests, and BOP shift schedules confirm, that McWilliams left FCC Petersburg at 4:10 p.m. on December 28, 2015 and did not return until 8:00 a.m. the following day, over an hour after Sowers reported to Sick Call at 6:26 that morning. DEX 2 ¶¶ 5, 7-8; DEX 3 at 3; DEX 4 at 3-4; DEX 1 at 79. McWilliams expressly attests that she "was not present at the Camp, or any other institution at FCC Petersburg at midnight on December 29, 2015, and did not have any interaction or conversation with or about Mr. Sowers in the evening of December 28, 2015, or in

the early morning hours of December 29, 2015." DEX 2 ¶ 5. It is firmly established that an individual-capacity defendant can have no liability for allegedly unconstitutional conduct unless he or she was personally involved in the deprivation. Iqbal, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Here, McWilliams' uncontroverted evidence establishes that she had no personal involvement whatever in the events giving rise to Sowers' claim against her, and for that reason she can have no liability to him.

Moreover, even if Sowers had been able to establish that it was McWilliams who told him to wait until sick call opened to see BOP medical staff rather than immediately having him transported to a hospital, his claim still would fail, because such an action falls well short of meeting the definition of deliberate indifference. Liability under the deliberate indifference standard "requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious meed for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001). Here, Sowers himself reports that after he described his symptoms to the lieutenant on duty the night he fell ill, she responded, "I don't know what this is." Patently, then, the person he has misidentified as McWilliams did not recognize that Sowers had a serious need for medical care, and her reaction of directing him to wait a few hours to discuss his condition with a BOP medical staff member at sick call did not amount to deliberate indifference.

Lastly, the delay of approximately six hours between Sowers' conversation with the lieutenant on duty and the time he was seen in sick call did not constitute deliberate indifference. A "plaintiff must supply 'hard evidence' of an unnecessary and wanton infliction of pain which has resulted in serious medical or emotional deterioration" to show that a delay in treatment

amounted to deliberate indifference. Johnson v. Williams, 768 F.Supp. 1161, 1165 (E.D. Va. 1991). When he was seen at sick call, Sowers denied experiencing any pain, shortness of breath, or labored breathing and complained instead only of lung congestion and night sweats. DEX 1 at 79. Under these circumstances, Sowers cannot show that the six-hour delay between his conversation with the lieutenant and his examination at sick call objectively caused him to suffer a "wanton infliction of pain" or a "serious medical or emotional deterioration." Id. For these reasons, Sowers has failed to establish that Lt. McWilliams violated his constitutional rights.

In his objections to defendants' Motion for Summary Judgment, Sowers argues that he may have misremembered the date on which his encounter with Lt. McWilliams took place. [Dkt. No. 31 at 6] McWilliams responded by providing the BOP personnel records for every night between Sowers' hernia surgery on December 21, 2015, and his transportation to FMC butner on January 14, 2016; they demonstrate that she was not present at FCC Petersburg's Camp facility any night during that time period. [Dkt. No. 36 at 4-7; DEX 8 ¶¶ 5-8 & Ex. A-C; DEX 9-10]. McWilliams attests that she "did not report to the Camp facility regarding any medical concerns of Plaintiff - with Lieutenant Adkins, with any other lieutenant, or by myself - during the December 21, 2015 through January 14, 2016 time period." DEX 8 ¶ 5. Indeed, the only date McWilliams worked a night shift at FCC Petersburg during the period in question was December 30, 2016, id. ¶ 6, but on that occasion she worked as Operations Lieutenant at the Low Facility from 4:00 p.m. until midnight rather than at the Camp where Sowers was confined. Id. ¶¶ 6-8. Further, she could not have reported to the Camp facility when her shift ended without being paid overtime, and her employment records demonstrate that she did not receive overtime on that date. DEX 8, Ex. C.

Under these circumstances, Sowers has failed to call into question the conclusion that McWilliams had no personal involvement in the events giving rise to his claims. And even if he had, as discussed above, the directions he received to wait to see a medical professional when sick call opened a few hours later as a matter of law did not amount to deliberate indifference. Accordingly, Lt. McWilliams can have no liability to Sowers for the claim he asserts against her.

### 2. Drs. Laybourn and DiCocco

Sowers alleges that Drs. Laybourn and Dicocco, through their "oversight" or by their "actions," violated his constitutional rights in three respects: (1) by not providing him with a fully-staffed Health Service Department twenty-four hours a day, Compl. ¶ 14; (2) by failing to replace x-ray equipment, Compl. ¶ 20; and (3) by deciding to transport him to FMC Butner rather than to a local hospital for treatment., Compl. ¶¶ 22, 34. Defendants are entitled to summary judgment on all of these claims.

First, Drs. Laybourn and Dicocco cannot be liable to Sowers for their alleged "oversight" of others' actions. As noted above, an individual capacity defendant cannot be held liable in the absence of personal involvement in deprivation of a plaintiff's constitutional rights. Iqbal, 556 U.S. at 676. Thus, the supervision of purportedly unconstitutional behavior lacks the requisite personal involvement to warrant liability. Id. Instead, a plaintiff to prevail must establish that a "Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. Here, then, to the extent that Sowers bases his claims against Drs. Laybourn and DiCocco on their "oversight" of the actions of others, Compl. ¶ 34, they are entitled to summary judgment.

Sowers seeks to hold Drs. Laybourn and DiCocco liable because FCC Petersburg does not offer "24 hour medical care" and as a result he had to wait about six hours to see medical staff after complaining of discomfort in the early hours of December 29, 2015. Compl. ¶ 14. Sowers identifies no actions taken by either defendant with regard to staffing hours at FCC Petersburg, Compl. ¶¶ 14, 34, and both specifically attest that have no involvement whatever in decisions concerning the hours that Health Services is staffed. DEX 5 ¶ 9; DEX 6 ¶ 9. Moreover, even were that not so, that fact that Sowers was required to wait for six hours to see a medical staff member after reporting lung congestion and night sweats did not amount to a situation that was shocking to the conscience or intolerable to fundamental fairness. See Frall v. LaSalle Sheriff Condie, 1996 WL 114571, at *3 (N.D. Ill. Mar. 14, 1996) (finding that a "jail [i]s not required to provide [an inmate] with constant and immediate access to a doctor for every ailment; a delay in medical treatment without any allegation or showing of intent does not amount to deliberate indifference."). For these reasons, Dr. Laybourn and Dr. DiCocco are entitled to summary judgment on Sowers' claims regarding the hours that Health Services at FCC Petersburg is open.

Sowers also asserts that Drs. Laybourn and DiCocco should be found liable for the alleged fact that one of the x-ray machines at FCC Peterburg was not working properly. Compl. ¶ 20. Aside from a vague reference to their "actions," however, Sowers fails to identify any personal involvement of either doctor with respect to any decision regarding the maintenance, repair, or replacement of FCC Petersburg's x-ray machines. Compl. ¶¶ 20, 34. Both doctors attest that they in fact had no such involvement, DEX 5 ¶ 7; DEX 6 ¶ 7, nor does either have any recollection of anyone reporting to them that the x-ray machine in the Low Facility was malfunctioning. DEX 5 ¶ 8; DEX 6 ¶ 8. Under these circumstances, Drs. Laybourn and

22

DiCocco cannot be liable with respect to Sowers' claim concerning the x-ray machine at FCC Petersburg.

Lastly, Sowers contends that medical staff at FCC Petersburg should have transported him directly to the local hospital following his second chest x-ray on January 7, 2016. Compl. ¶ 22. According to Sowers, this decision was made by unknown "superiors" who "chose[] the cheaper option [of] placing him on an already-scheduled bus ride to the federal medical prison" rather than opting to send him "to the hospital immediately." Id. The record establishes that FCC Petersburg's Utilization Review Committee ("the Committee"), which included Drs. Laybourn and DiCocco among its members, decided on January 12, 2016 to transport Sowers to FMC Butner. Nothing suggests that this decision constituted an Eighth Amendment violation. When the Committee reviewed MLP Zayas' request to transfer Sowers to FMC Butner for a CT scan, medical tests had suggested that Sowers was suffering from either a mass or an infection in his lung; there was no suggestion that a pulmonary embolism existed. DEX 1 at 85, 89. As such, Sowers cannot establish that Drs. Laybourn and DiCocco "kn[ew] of and disregard[ed]" any "objectively serious condition, medical need, or risk of harm" in determining that Sowers should be transported to FMC Butner, and their decision accordingly did not amount to deliberate indifference. Young, 238 F.3d at 575-76.[7]

In his opposition to the individual federal defendants' summary judgment motion, Sowers does not dispute that Drs. Laybourn and DiCocco cannot be held liable for their alleged

---

[7]To be sure, in the two weeks that elapsed between Sowers's first complaint of discomfort on December 29, 2015 and the treatment of his pulmonary embolism on January 14, 2016, he was seen and treated by medical staff at FCC Petersburg six times. DEX 1 at 57-81. Three x-rays and an EKG were performed, and Sowers's vital signs were monitored constantly, id. at 74-75, 79, 89-92, yet none of the medical providers suspected a pulmonary embolism or informed Drs. Laybourn and DiCocco of the possibility of such a condition.

"oversight" of the actions of others in his first two claims. [Dkt. No. 31 at 9-10] He also does not dispute that even if he could establish that either doctor had personal involvement in the lack of 24-hour medical care at FCC Petersburg or the alleged malfunction of one its x-ray machines, such conduct would not amount to an Eighth Amendment violation. Therefore, Drs. Laybourn and DiCocco are entitled to summary judgment on those claims.

As to Sowers' claim that Drs. Laybourn and DiCocco were personally involved in the decision to transport him to FMC Butner rather than to a local hospital, he argues essentially that they should have realized immediately that he had a pulmonary embolism when his x-ray demonstrated a pleural effusion, because a pulmonary embolism is a possible cause of pleural effusion. [Dkt. No. 31 at 9-10] Distilled to its essence, such an argument amounts to a charge that the doctors misdiagnosed Sowers' condition, and it is settled that even when a plaintiff can establish a misdiagnosis, deliberate indifference is not demonstrated, because deliberate indifference "requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Wester v. Jones, 554 F.2d 1285, 1286 (4th Cir. 1977); see also, Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986) (negligent medical diagnosis does not amount to deliberate indifference).

Because Sowers has failed to establish that any of the individual federal defendants violated his constitutional rights, they cannot be liable to him under Bivens. See Pike, 301 F.3d at 185. That being so, the Court need not address the defendants' reliance on the doctrine of qualified immunity. See Shabazz v. Va. Dep't of Corrections, 2013 WL 1098102, at *9 n. 20 (E.D. Va. Mar. 15, 2013); Long v. Beres, 2013 WL 139342, at *5 (E.D. Va. Jan. 19, 2013).

### III. Motion to Dismiss or for Summary Judgment of
### Defendant Ms. Goffaux

Defendant Virginia Mae Goffaux filed a Motion to Dismiss or, in the Alternative, for Summary Judgment with a supporting memorandum and exhibits on August 6, 2018, and supplied Sowers with the appropriate <u>Roseboro</u> notice. [Dkt. No. 43-44, 46] Sowers submitted a response in opposition on August 24, 2018 [Dkt. No. 51], and Goffaux filed a reply on August 29, 2018. [Dkt. No. 52]

A. <u>Additional Pertinent Undisputed Facts</u>

1. Goffaux is employed as a private contractor by Seaborn Health Care and has never been an employee of the United States. [Dkt. No. 44, Ex. 1 at ¶¶ 4-5] She had been the x-ray technician at FCC Petersburg for 14 years at the time of the incident in question and took the x-rays at all three of the FCC Petersburg facilities. <u>Id.</u>, ¶¶ 3, 7.

2. Goffaux's sole responsibility was to complete x-rays and transmit the images to be read by appropriate medical personnel. <u>Id.</u> ¶ 6. She was not responsible for ordering or scheduling x-rays for inmates, nor did she read the x-rays after they were taken.

3. The GE portable x-ray at the Camp facility has been out of service since June, 2015, because it needs a new battery. <u>Id.</u> ¶ 8. Goffaux reported that the unit was not working on several occasions to eight (8) different administrators. <u>Id.</u> ¶ 10. She was informed that a new battery for the unit would cost $8,000 and was not in the budget, and she was instructed that when Camp inmates needed x-rays she was to take them to the Low facility. <u>Id.</u> ¶ 12.

4. To Goffaux's knowledge, the x-ray unit at the Low facility has been and is in working order. <u>Id.</u> ¶ 13.

5. Goffaux took an x-ray of Sowers' chest using the unit in the Low facility on December 30, 2015. The x-ray "came back showing nothing wrong." Compl. ¶ 16.

6. Several days later, Sowers was returned to the Low facility for another x-ray. Compl. ¶ 20. This time the x-ray showed a collapsed lung and a mass which could not be identified. Id. After the x-ray was taken, while Sowers was waiting outside the x-ray room, he heard Goffaux say to the medical staff member who had escorted Sowers to the unit, "This was not on the other x-ray." Later she remarked, "We've been having problems with the equipment. I keep telling them we need new equipment." Id.

5. Goffaux is not responsible for equipment upkeep, nor does she have authority to require the BOP to repair or perform maintenance on any of the x-ray units. Id. ¶¶ 14-15.

6. Goffaux was never served with the complaint from this action, and she never gave anyone permission to accept service on her behalf. She knows about the lawsuit only because she found a copy of the complaint on her desk at FCC Petersburg. Id. ¶¶ 17-18.

B. Analysis

It takes little discussion to conclude that Sowers' claim against Goffaux must be dismissed, for two reasons. First, as an employee of an independent contractor rather than an employee of the United States, Goffaux cannot be sued pursuant to the FTCA. See Kramer v. United States, 843 F.Supp. 1066 (E.D. Va. 1994) (personnel employed by a private company to provide medical services at a government facility were independent contractors could not be sued pursuant to the FTCA). Even if the Court were to construe Sowers' claim against her as also having been brought pursuant to Bivens, that result would not change, because a Bivens cause of action is available only against federal officials in their individual capacities. See O'Neil v. Anderson, 372 F. A'ppx 400 (4th Cir. Mar. 29, 2010) (holding that Bivens liability did not extend to a physician contracted to treat federal inmates).

Second, Sowers has come forward with nothing to rebut Goffaux's sworn declaration that she had no responsibility or ability to maintain or to repair any of the x-ray equipment at FCC Petersburg, nor does she have authority to require the BOP to repair or to perform maintenance on any of the x-ray units. Therefore, even if the x-ray machine in the Low unit did malfunction during Sowers' first x-ray, as he claims, he can state no claim against Goffaux for the failure to have the machine properly maintained or repaired. Indeed, Goffaux states, and Sowers admits, see Compl. ¶ 29, that she had reported the fact that the x-ray unit at the Camp facility needed a new battery to eight separate officials, with no result. Under these circumstances, even if Goffaux were amenable to suit under either the FTCA or Bivens, Sowers' claim states no basis upon which she could be held liable to him for the harm he claims. Because nothing in Sowers' response to Goffaux's motion [Dkt. No. 51] alters these conclusions, and summary judgment will be entered in her favor.[8]

### IV. Sowers' Unauthorized Sur-Reply

After the United States and the individual federal defendants filed their replies to Sowers' opposition to their Motion to Dismiss, Sowers addressed a letter to the Court in which he asserted that McWilliams' reply was "rife with statement of significant factual dispute" and that "Ms. McWilliams' astonishing tale that she was not present the night in question will be repeatedly refuted and proved to be untrue. As mentioned above, a number of people, both inmates and staff, will attest to her presence that evening." Sowers concluded by requesting that the government's Motion to Dismiss be denied on the basis of this "intense factual debate." [Dkt.

---

[8]Goffaux also has moved for dismissal of the complaint pursuant to Fed. R. Civ. P. Rule 4(e) because she was never properly served with the complaint, and became aware of the lawsuit only when she found a copy of the complaint lying on her desk. Her argument is well taken; however, dismissal of the complaint for insufficient service of process at this stage would be a waste of judicial resources, because Sowers' claim against her patently is meritless.

No. 38] Because Sowers did not supply a copy of this correspondence to counsel for the defendants, the Court forwarded a copy to counsel for the defendants on July 23, 2018, and allowed them an opportunity to respond. Defendants did so by arguing that the letter amounts to a sur-reply seeking discovery, and should be denied. [Dkt. No. 49] The Court agrees.

A court has the discretion to allow a sur-reply where a party brings forth new material or deploys new arguments in a reply brief. See, e.g., Lewis v. Rumsfeld, 154 F.Supp.2d 56, 61 (D.D.C. 2001). Generally, courts allow a party to file a sur-reply only when fairness dictates based on new arguments raised in the previous reply. United States v. Falice, No. 1:04CV878, 2006 WL 2488391, at *7 (M.D.N.C. Aug. 25, 2006); Khoury v. Meserve, 268 F.Supp.2d 600, 605-06 (D. Md. 2003), aff'd, 85 F. App'x 960 (4th Cir. 2004). None of the factors which would warrant allowance of a sur-reply is present here. Defendants argued in support of their Motion for Summary Judgment that McWilliams "was not present [on] the night in question" and could not have been the person who told Sowers to wait to be seen at sick call the next morning, so a sur-reply to attempt to refute that position is not warranted. Further, to the extent that Sowers insinuates in his sur-reply that summary judgment should not be entered because further factual development of his claims is warranted, his attempt falls short. Sowers' unsworn, vague assertions that "a number of" unidentified inmates and staff members would attest that McWilliams was on duty the night he fell ill are insufficient both to satisfy the requirements of Fed. R. Civ. P. 56(d), and to require that the entry of summary judgment be deferred. See Nguyen v. CAN Corp., 44 F.3d 243, 242 (4th Cir. 1995) (to comply with Rule 56(d), party must set out reasons for the need for discovery in an affidavit and not merely in a brief); Dave & Buster's, Inc. v. White Flint Mall, LLP, 616 F. App'x 552, 561-62 (4th Cir. 2015) (district court rightfully refused to reconsider its conclusions regarding summary "on the basis of only 'vague

assertions' of what possible facts might be discovered to support [plaintiff's] claim.'").

Accordingly, Sowers' letter to the Court, construed as an unauthorized sur-reply seeking discovery, must be denied.

## V. Conclusion

For the foregoing reasons, the United States' Motion to Dismiss for Lack of Jurisdiction must be granted, and its Motion for Summary Judgment must be granted in the alternative. The Motion for Summary Judgment of individual federal defendants DiCocco, Laybourn, and McWilliams likewise must be granted, as must the Motion to Dismiss or in the Alternative, for Summary Judgment of defendant Goffaux. Plaintiff's letter to the Court dated June 10, 2018, construed as an unauthorized sur-reply seeking discovery [Dkt. No. 38], must be denied, and plaintiff's claims against the unserved anonymous defendants must be dismissed, without prejudice pursuant to Fed. R. Civ. P. 4(m). An appropriate Order and judgment shall issue.

Entered this _20th_ day of _December_ 2018.

Alexandria, Virginia

T. S. Ellis, III
United States District Judge